**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

RONALD M. YONEMOTO,
            *Plaintiff-Appellant,*

v.

DEPARTMENT OF VETERANS AFFAIRS,
            *Defendant-Appellee.*

No. 10-15180

D.C. No.
1:06-cv-00378-BMK

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Hawaii
Barry M. Kurren, Magistrate Judge, Presiding

Argued and Submitted
February 15, 2011—Honolulu, Hawaii

Filed August 17, 2011
Amended January 18, 2012

Before: A. Wallace Tashima, William A. Fletcher, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon

## COUNSEL

Peter Van Name Esser of the Law Offices of Peter Van Name Esser, Honolulu, Hawaii, for plaintiff-appellant Ronald M. Yonemoto.

Charles W. Scarborough and Leonard Schaitman of the Civil Division of the Department of Justice, Washington, DC, for defendant-appellee Department of Veteran Affairs.

## ORDER

The court sua sponte recalls the mandate issued on October 12, 2011. The opinion filed on August 17, 2011, and reported at 648 F.3d 1049, is hereby amended. The amended opinion is filed concurrently with this order. The court directs the Clerk to reissue the mandate forthwith.

**IT IS SO ORDERED.**

## OPINION

BERZON, Circuit Judge:

The Freedom of Information Act, ("FOIA"), 5 U.S.C. § 552, mandates that federal agencies make their records

available to the public upon request, subject to nine discretionary exemptions. *See Milner v. Dep't of Navy*, 131 S. Ct. 1259, 1262 (2011). This case presents two FOIA issues. The first is whether an agency fulfills its disclosure obligation by offering to supply the documents to the requester, but only in his capacity as an employee of that agency. The answer to that question is unquestionably "no." The second involves application to internal emails of FOIA Exemption 6, which provides that an agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff-appellant Ronald M. Yonemoto is an employee of the Veterans Health Administration ("VHA"), a component of the defendant-appellee, the Department of Veteran Affairs ("the VA" or "the agency"). Between May 2005 and April 2006, Yonemoto submitted eight requests under the FOIA and the Privacy Act, 5 U.S.C. § 552a, primarily asking for emails to and from specified individuals. In response, the VA made a number of disclosures totaling about 1500 pages, but withheld some records in part and some in their entirety, pursuant to various FOIA exemptions. After exhausting his avenues for administrative relief, Yonemoto filed suit in the District Court for the District of Hawaii on July 11, 2006, alleging violations of both the FOIA and the Privacy Act.

Given the breadth of Yonemoto's requests and the overlap in the FOIA exemptions the VA claimed, the parties and the district court agreed that the VA would move for partial summary judgment as to one of Yonemoto's requests, the decision on which the district court would certify for interlocutory appeal under 28 U.S.C. § 1292(b). The motion for partial summary judgment concerned redactions of parts of five emails under Exemption 6. The district court granted the VA's motion for partial summary judgment, holding the agen-

cy's redactions permissible and the emails not subject to disclosure under the Privacy Act. *See Yonemoto v. Dep't of Veterans Affairs* ["*Yonemoto I*"], No. 06-CV-378, 2007 WL 1310165, at \*4-6 (D. Haw. May 2, 2007). The district court then stayed the rest of the case pending Yonemoto's interlocutory appeal. *Id.* at \*7.

A motions panel granted Yonemoto permission to appeal under 28 U.S.C. § 1292(b) in August 2007, and the appeal was calendared for oral argument on November 20, 2008. Shortly before the argument, the VA produced the emails at issue to Yonemoto, unredacted, in response to a discovery request regarding a charge pending with the Equal Employment Opportunity Commission ("EEOC") concerning whether the VA had discriminated against Yonemoto. The interlocutory appeal was thereafter dismissed in a memorandum disposition, which stated in relevant part:

> Yonemoto [has] informed the court that the VA produced the redacted materials in the discovery process of his EEOC claim. This production moots Yonemoto's claims. *See Papa v. United States*, 281 F.3d 1004, 1013 (9th Cir. 2002) (stating production of all nonexempt material, "however belatedly," moots FOIA claims). Yonemoto argues that the claim is not moot, because the decision would be applicable to other FOIA/Privacy Act claims pending before the district court. We disagree. The district court has not ruled on those issues. Given the disclosure of the disputed redacted materials in his EEOC action, Yonemoto may receive the remaining materials in any event. *See Church of Scientology of Cal. v. Dep't of Army*, 611 F.2d 738, 746 (9th Cir. 1979) (noting the availability of any alternative means of obtaining the requested information is a factor in determining whether disclosure is proper). Upon remand, the district court can determine whether Yonemoto's entire claim is moot.

*Yonemoto v. Dep't of Veterans Affairs* ["*Yonemoto II*"], 305 F. App'x 333, 334 (9th Cir. 2008) (unpub.).

Upon remand, the parties narrowed their dispute to 205 emails. *See Yonemoto v. Dep't of Veterans Affairs* ["*Yonemoto III*"], No. 06-CV-378, 2009 WL 5033597 (D. Haw. Dec. 22, 2009). The VA permitted Yonemoto to view 190 of those emails in full, but only in his capacity as a VA employee. After viewing the 190 emails, Yonemoto withdrew his request for 33 of them. The VA then offered to provide Yonemoto unredacted copies of the 157 emails that he had seen, but, again, only "as a VA employee." The VA's Assistant Regional Counsel explained in a declaration submitted to the district court that "[t]he VA's purpose for making the emails available to Plaintiff as a VA employee was to allow Plaintiff to view the emails without requiring the VA to make the emails available to the public, as a FOIA production would." Yonemoto declined the VA's offer.

The parties again filed cross-motions for summary judgment. Still contested were the 157 emails copies of which Yonemoto had viewed in full (but did not have in unredacted form) and redactions of 15 emails that the VA had not permitted him to see in full. Of the latter group, 3 were duplicates, so 169 emails were at issue.

The district court held a hearing on the cross-motions for summary judgment on December 11, 2009. During the hearing, the district court suggested—although the VA had not argued—that the VA's offer to give the 157 emails to Yonemoto in his capacity as an employee mooted his FOIA claim to those documents. Yonemoto contested that proposition, maintaining that there would be limitations on distributing emails received as a VA employee. Confirming that assertion, the VA's attorney represented that if Yonemoto received the records as an employee, "there are restrictions on you that aren't the same as if you're getting that document as a citizen," and explained that the VA did not want to "publicize

[the offered emails] to the world." Although the VA argued that it had carried its burden on summary judgment to justify the redactions, the agency never supported the district court's mootness suggestion. At the conclusion of the hearing, the district court ordered the VA to submit for an *in camera* review the 12 emails Yonemeoto had not seen.

Shortly thereafter, the district court issued an order granting summary judgment to the VA, holding that: (1) the VA's offer to produce the 157 emails to Yonemoto in his capacity as an employee mooted his claim as to those emails; (2) the redacted portions of the remaining 12 emails were properly withheld under Exemptions 2,[1] 5,[2] and 6; and (3) Yonemoto could not obtain the emails under the Privacy Act. Yonemoto timely appealed these first two holdings, but abandoned his Privacy Act claim.

In his opening brief, Yonemoto addressed all three of the VA's claimed FOIA exemptions. The VA's answering brief, however, abandoned reliance on Exemptions 2 and 5 by notifying us that (1) the VA had recently disclosed to Yonemoto in unredacted form 3 of the 12 disputed emails, each of which had been redacted only under Exemption 2; and (2) the VA was declining to defend the remaining redactions on any basis save Exemption 6.

This appeal thus comes down to two issues: (1) whether the VA's offer of the 157 emails to Yonemoto in his capacity as an employee mooted his claim to those emails; and (2) whether the VA can withhold the redacted portions of the other 9 emails under Exemption 6.

---

[1]Exemption 2 "shields from compelled disclosure documents 'related solely to the internal personnel rules and practices of an agency.' " *Milner*, 131 S. Ct. at 1262 (quoting 5 U.S.C. § 552(b)(2)).

[2]Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

**DISCUSSION**

**[1]** The FOIA's "core purpose" is to inform citizens about "what their government is up to." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773, 775 (1989) (citation omitted). This purpose is accomplished by "permit[ting] access to official information long shielded unnecessarily from public view and attempt[ing] to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *EPA v. Mink*, 410 U.S. 73, 80 (1973), *superceded by statute on other grounds, as recognized by Ray v. Turner*, 587 F.2d 1187, 1190-91 & n.9 (D.C. Cir. 1978). Such access, in turn, will "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted).

**[2]** At the same time, the FOIA contemplates that some information can legitimately be kept from the public through the invocation of nine "exemptions" to disclosure. *See* 5 U.S.C. § 552(b)(1)-(9). The exemptions are discretionary, *see Chrysler Corp. v. Brown*, 441 U.S. 281, 293 (1979); "are 'explicitly made exclusive,' " *Milner*, 131 S. Ct. at 1262 (quoting *Mink*, 410 U.S. at 79)—meaning that information not falling within any of the exemptions has to be disclosed; "and must be 'narrowly construed.' " *Id.* (quoting *FBI v. Abramson*, 456 U.S. 615, 630 (1982)). Given these interpretive precepts, "[t]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7-8 (2001) (citation omitted).

When an agency chooses to invoke an exemption to shield information from disclosure, it bears the burden of proving the applicability of the exemption. *See Reporters Comm.*, 489 U.S. at 755. An agency may withhold only that information to which the exemption applies, and so must provide all "rea-

sonably segregable" portions of that record to the requester. 5 U.S.C. § 552(b); *see Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

Because facts in FOIA cases are rarely in dispute, most such cases are decided on motions for summary judgment, *see Flightsafety Servs. Corp v. Dep't of Labor*, 326 F3d 607, 610 (5th Cir 2003); *Department of Justice Guide to the Freedom of Information Act* 803 (2009 ed.).[3] To carry their summary judgment burden, agencies are typically required to submit an index and "detailed public affidavits" that, together, "identify[ ] the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption." *Lion Raisins v. Dep't of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004). These submissions—commonly referred to as a *Vaughn* index[4]— must be from "affiants [who] are knowledgeable about the information sought" and "detailed enough to allow court to make an independent assessment of the government's claim [of exemption]." *Id.* at 1079; *see also* 5 U.S.C. § 552(a)(4)(B) ("On complaint, the district court . . . . shall determine the matter de novo, . . . and the burden is on the agency to sustain its action.").

Our review of a grant of summary judgment in a FOIA case, however, is slightly different than for other types of cases; in essence, we treat the judgment as if it were a bench trial: We first determine, *de novo*, "whether an adequate factual basis exists to support the district court's decisions." *Lane v. Dep't of Interior*, 523 F.3d 1128, 1135 (9th Cir. 2008). If not, we must remand for further development of the record. *See Fiduccia v. Dep't of Justice*, 185 F.3d 1035, 1040 (9th Cir. 1999). If such a basis does exist, "then the district court's conclusions of fact are reviewed for clear error"[5]—which is

---

[3] *Available at* http://www.justice.gov/oip/foia_guide09.htm.

[4] *See Vaughn v. Rosen*, 484 F.2d 820, 823-25 (D.C. Cir. 1973).

[5] Our cases do not explain why this is so, and one can question whether it should be. By definition, summary judgment may be granted only when

the way in which the proceeding is treated like a bench trial—
"while legal rulings, including its decision that a particular
exemption applies, are reviewed *de novo*." *Lane*, 523 F.3d at
1135; *see generally Lion Raisins*, 354 F.3d at 1078.

## I.

We first consider, de novo, whether the VA's offer of 157
of the disputed emails to Yonemoto in his capacity as a VA
employee mooted his claim to those emails under the FOIA.
*See Siskiyou Reg'l Educ. Project v. U.S. Forest Serv.*, 565
F.3d 545, 559 (9th Cir. 2009). It did not.

## A.

**[3]** Under the FOIA, a plaintiff's ability to obtain relief "is
dependent upon a showing that an agency has (1) 'improp-
erly'; (2) 'withheld'; (3) 'agency records.'" *Kissinger v.
Reporters Comm. for Freedom of the Press*, 445 U.S. 136,
150 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)). A federal court
can provide a remedy pursuant to the FOIA only "if the
agency has contravened all three components of this obliga-
tion." *Id.*; *see also Spurlock v. FBI*, 69 F.3d 1010, 1015 (9th
Cir. 1995).

**[4]** As with other types of civil cases, a suit under the
FOIA can be rendered moot by events subsequent to its filing.
The remedy requested here is one typical in a FOIA action:
that the court "enjoin the agency from withholding agency
records and . . . order the production of any agency records
improperly withheld from the complainant." 5 U.S.C.

there are no disputed issues of material fact, and thus no factfinding by the
district court. *See* Fed. R. Civ. Proc. 56(c); *see generally* Rebecca Silver,
Comment, *Standard of Review in FOIA Appeals and the Misuse of Sum-
mary Judgment*, 73 U. Chi. L. Rev. 731 (2006). We need not pursue the
matter further, however, as we have no occasion in this opinion to review
any district court findings of fact.

§ 552(a)(4)(B). As we have previously observed, "the production of all nonexempt material, 'however belatedly,' moots FOIA claims." *Papa*, 281 F.3d at 1013 (quoting *Perry v. Block*, 684 F.3d 121, 125 (D.C. Cir. 1982)). That result obtains because once the defendant agency has fully complied with the FOIA's production mandate, the plaintiff is no longer suffering or threatened with "an actual injury traceable to the defendant" that is "likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citation and quotation marks omitted); *see also Carter*, 780 F.2d at 1481; *Cornucopia Inst.*, 560 F.3d at 675-76.

**[5]** To moot a FOIA claim, however, the agency's production must give the plaintiff everything to which he is entitled. Otherwise, there remains some "effective relief" that can be provided the plaintiff, and the case is not moot. *Siskiyou Reg'l Educ. Project*, 565 F.3d at 559 (citation omitted). A FOIA claim is not moot, for example, if the agency produces what it maintains is all the responsive documents, but the plaintiff challenges "whether the [agency's] search for records was adequate." *Nw. Univ. v. Dep't of Agric.*, 403 F. Supp. 2d 83, 85-86 (D.D.C. 2005); *see also* 5 U.S.C. § 552(a)(3)(C)-(D) (requiring agencies to conduct a search reasonably calculated to uncover all records responsive to the request). In that situation, there is still a live controversy regarding whether the agency is withholding records. *See, e.g.*, *Papa*, 281 F.3d at 1013.

**[6]** The district court in this case held that when the VA offered the 157 emails to Yonemoto in his capacity as its employee, the agency was no longer withholding those records within the meaning of 5 U.S.C. § 552(a)(4)(B), and the claim was therefore moot. *See Yonemoto III*, 2009 WL 5033597, at *4. But the district court's premise regarding the reach of § 552(a)(4)(B) was wrong, making its mootness conclusion wrong as well. Under the FOIA, Yonemoto was entitled to the records unencumbered by restrictions on further use or dissemination. Access as a VA employee entails

restrictions on dissemination, and so does not provide the access granted by the FOIA.

As to the first point, as the Department of Justice recognizes, "it is well settled that it is not appropriate for a court to order disclosure of information to a FOIA requester with a special restriction, either explicit or implicit, that the requester not further disseminate the information received." *Department of Justice Guide to the Freedom of Information Act* 721 (footnote omitted). This principle derives from the understanding that "FOIA provides every member of the public with equal access to public documents and, as such, information released in response to one FOIA request must be released to the public at large." *Forest Serv. Emps. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1025 (9th Cir. 2008). For that reason, the "FOIA does not permit selective disclosure of information only to certain parties[.] . . . [O]nce the information is disclosed to [one requester], it must also be made available to all members of the public who request it." *Maricopa Audubon Soc'y. U.S. Forest Serv.* ["*Maricopa I*"], 108 F.3d 1082, 1088 (9th Cir. 1997). Because that is the case, restrictions on FOIA releases to *A* on the condition that she not share it with *B*, *C*, or *D* would have only the effect that *B*, *C*, or *D* would have to make their own, identical FOIA requests of the agency, in which case they would be entitled to the same information *A* received.

The case law does not sanction such redundancy. Instead, it recognizes that "if the information is subject to disclosure, it belongs to all." *Nat'l Archives & Records v. Favish*, 541 U.S. 157, 172 (2004). As each release is one to the public at large, each release allows *A*, the recipient, to provide the information to *B*, *C*, and *D* if she so chooses. Thus, an agency does not comply with the FOIA when it produces records subject to restrictions on how those records may be used. *See Schiffer v. FBI*, 78 F.3d 1405, 1411 (9th Cir. 1996); *see also Maricopa I*, 108 F.3d at 1088 n.5. That is why "[t]here is no mechanism under FOIA for a protective order allowing only

the requester to see whether the information bears out his theory, or for proscribing its general dissemination." *Favish*, 541 U.S. at 174.

**[7]**  As to the second consideration, there is no question that the VA's offer of the 157 emails to Yonemoto in his capacity as an employee was an attempt to do precisely what the FOIA prohibits—restrict dissemination of the information received. The VA recognized both in an affidavit filed in support of summary judgment and at oral argument before the district court that the point of structuring its offer as it did was to restrict Yonemoto from further disseminating the records. Indeed, the Veterans Health Administration Handbook imposes extensive restrictions, backed by the threat of discipline, on VA employees' use and disclosure of internal VHA information. *See* Dep't of Veterans Affairs, Veterans Health Admin., VHA Handbook 1605.1 (May 17, 2006).[6]

**[8]**  Because its offer of disclosure was conditioned on Yonemoto receiving the records subject to restrictions, the VA was still withholding the requested records within the meaning of the FOIA. Yonemoto's claim therefore was not moot, and the district court should have proceeded to determine whether the VA was withholding the records "improperly." *Kissinger*, 445 U.S. at 150 (quoting 5 U.S.C. § 552(a)(4)(B)).

### B.

The VA concedes, as it must, that the FOIA prohibits disclosures subject to restrictions on dissemination, but makes two arguments as to why Yonemoto's claim for the 157 emails offered to him in his capacity as a VA employee is moot. Neither is persuasive.

---

[6]  *Available at* http://www.va.gov/vhapublications/ViewPublication. asp?pub_ID=1423.

**1.**

First, the VA maintains that because Yonemoto has not identified a way in which he wanted to use the information that would have contravened the employee handbook, the restrictive terms of the VA's offer of disclosure would not have *effectively* limited his use of the information.

This proposition misses the mark entirely. A requestor's purpose for requesting the documents or his intended use of the information sought does not matter under the FOIA. As the Supreme Court has explained:

> FOIA is often explained as a means for citizens to know "what their Government is up to." This phrase should not be dismissed as a convenient formalism. It defines a structural necessity in a real democracy. The statement confirms that, as a general rule, when documents are within FOIA's disclosure provisions, citizens should not be required to explain why they seek the information. A person requesting the information needs no preconceived idea of the uses the data might serve. The information belongs to citizens to do with as they choose.

*Favish*, 541 U.S. at 171-72 (citation omitted). Thus, it doesn't matter what Yonemoto wanted to do with the records obtained through FOIA; his ostensible purpose, assuming he even had one in advance, has no bearing on whether or not his claim is moot. *See id.*; *Dep't of Def. v. Fed. Labor Rel'ns Auth.*, 510 U.S. 487, 496 (1994); *Reporters Comm.*, 489 U.S. at 772. "A party's rights under FOIA 'are neither increased nor decreased by reason of the fact that it claims an interest . . . greater than that shared by the average member of the public.' " *Maricopa I*, 108 F.3d at 1088 n.5 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n.10 (1975) (alteration in original)).

## 2.

The VA's second, related argument is based on the "law of the case" doctrine. Under this doctrine, "a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *United States v. Bad Marriage*, 439 F.3d 534, 538 (9th Cir. 2006) (quoting *Minidoka Irrigation Dist. v. Dep't of Interior*, 406 F.3d 567, 573 (9th Cir. 2005)); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988). The VA argues that Yonemoto "ignores the binding effect of this Court's prior mootness ruling" in *Yonemoto II*, by failing to explain "how the putative restrictions on his use of the 157 emails . . . would have been more onerous than the restrictions on his use of materials produced in his EEOC case—that is, materials provided to him in his capacity as a VA employee allegedly aggrieved by unlawful discrimination."

The argument is fatally flawed. It ignores the default rule concerning discovery, which is that "the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002) (citation omitted). Given that presupposition, the *Yonemoto II* panel, absent a basis for thinking otherwise, would have had no reason to expect that Yonemoto was restricted in disseminating the EEOC discovery material, and so cannot be taken to have approved any restriction. In fact, nothing in the written filing notifying the *Yonemoto II* panel that Yonemoto had received the disputed records through the EEOC discovery process hinted that Yonemoto's dissemination of these records might be restricted—and, to this day, the VA presents no reason to conclude that Yonemoto *is* so restricted. Further, the Yonemoto II disposition, contains no suggestion of that possibility. *See* 305 F. App'x at 333-34.

In sum, whether the VA's offer to produce the records subject to restrictions otherwise applicable to employees com-

plies with the FOIA, therefore, was not "previously decided" by this court. *Bad Marriage*, 439 F.3d at 538. The VA's invocation of the law of the case is therefore unavailing.

**3.**

As an alternative to mootness, the VA advances two arguments as to why we should nonetheless affirm the district court's grant of summary judgment regarding the 157 emails. We will consider those arguments, as "[w]e can affirm the decision of the district court on any ground supported by the record, even one not relied on by that court." *Nw. Envtl. Def. Ctr. v. Brown*, 640 F.3d 1063, 1080 (9th Cir. 2011).

First, citing the general rule that we "will not consider an issue raised for the first time on appeal," *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006), the VA argues that Yonemoto "waived any claim of error with respect to these emails by not specifically addressing the VA's claimed exemptions." But that contention is simply not true. Yonemoto argued before the district court that the VA's *Vaughn* index was insufficiently detailed to carry the agency's burden to justify redactions made to the 157 emails, and that the VA applied each exemption too broadly. He waived nothing.

The VA also asserts that because Yonemoto had the opportunity to view the emails in an unredacted form (but not to obtain copies for unrestricted use), he cannot now complain that the VA's *Vaughn* index was insufficient to justify the redactions. We reject the VA's argument, which ignores a cardinal rule of FOIA litigation: "FOIA's 'strong presumption in favor of disclosure' means that an agency that invokes one of the statutory exemptions . . . bears the burden of demonstrating that the exemption properly applies to the documents." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (quoting *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). The VA's argument, in essence, is that permitting Yonemoto to see the unredacted documents shifted the

burden to him to disprove the propriety of particular redactions.

The FOIA does not permit the agency to shift its burden in this manner, as "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B). Nor does the FOIA permit the agency to avoid so easily its obligation to justify its FOIA decisions to the district court, which is statutorily required to undertake a de novo assessment. *See id.*; *Lion Raisins*, 354 F.3d at 1082-83.

## C.

**[9]** In summary, Yonemoto's FOIA claim to the 157 emails was not rendered moot by the VA's offer to produce the emails to him in his capacity as a VA employee. Nor are the VA's other arguments for affirmance persuasive. We therefore remand to the district court for it to rule on the propriety of the VA's claimed exemptions in the first instance.

## II.

**[10]** Aside from the 157 emails as to which the district court declared the FOIA dispute moot, nine of the twelve emails viewed by the district court *in camera* remain contested. All of the redactions are now defended as covered only by Exemption 6. The district court held that all of the withheld information was properly subject to Exemption 6. *See Yonemoto III*, 2009 WL 5033597, at *6-*8.

## A.

**[11]** Exemption 6 provides that an agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Yonemoto has not argued that the emails here are not "similar files." Thus, the only question before us is whether the VA has proven that the

redacted information, if disclosed, "would constitute a clearly unwarranted invasion of personal privacy." *Id.* Making this determination requires us "to balance the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny." *Ray*, 502 U.S. at 175 (quotation marks omitted)

The first step in evaluating whether Exemption 6 applies is ensuring that disclosure implicates a personal privacy interest that is "nontrivial," *Forest Serv. Emps.*, 524 F.3d at 1026 (citation omitted), or, put differently, "more than . . . de minimis." *Lahr*, 569 at 977. That determination involves assessing both the nature of the privacy interest at stake and the likelihood that disclosure would lead to its invasion.

As for the nature of the privacy interest at stake, the "personal privacy" contemplated by Exemption 6, as well as its law-enforcement counterpart, Exemption 7(C),[7] "encompass-[es] the individual's control of information concerning his or her person," *Reporters Comm.*, 489 U.S. at 763, but it is not

---

[7]Exemption 7(C) allows withholding "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). As both it and Exemption 6 require balancing the public interest with "personal privacy," cases interpreting the interest in "personal privacy" with regard to one of the two exemptions are useful in the context of the other. *See FCC v. AT&T Inc.*, 131 S. Ct. 1177, 1184-85 (2011) (looking to cases construing Exemption 6 to hold that the "personal privacy" protected by Exemption 7(C) does not encompass corporations' privacy); *see also Favish*, 541 U.S. at 165-66 (comparing and contrasting Exemptions 6 and 7(C)); *Lahr*, 569 F.3d at 974 (same). If a nontrivial privacy interest is at stake, however, Exemption 7(C) requires a somewhat higher showing of public interest to overcome it than does Exemption 6. The latter requires the agency to show that releasing the information "*would* constitute a *clearly* unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6) (emphases added), whereas Exemption 7(C) states permits withholding law enforcement records if their release "*could reasonably be expected* to constitute an unwarranted invasion of personal privacy," *id.* § 552(b)(7)(C) (emphasis added). *See generally Lahr*, 569 F.3d at 974.

limited to just that type of information. *See Favish*, 541 U.S. 157, 165 (2004) ("[T]he concept of personal privacy under Exemption 7(C) is not some limited or 'cramped notion' of that idea." (citation omitted)). *Favish*, for example, held that individuals had privacy rights that would be implicated by releasing the "death-scene photographs" of a family member who had committed suicide. *See id.* at 164-67. Although emphasizing that the right to privacy under Exemption 7(C) is not coterminous with the common law and the Constitutional conceptions of privacy, *see id.* at 170, *Favish* interpreted the term "personal privacy" as reflecting congressional intent to protect "against public intrusions long deemed impermissible under the common law and in our cultural traditions." *Id.* at 167.

**[12]** At the same time, the threat to personal privacy occasioned by disclosure must be nonspeculative. "The legislative history is clear that Exemption 6 was directed at threats to privacy interests more palpable than mere possibilities." *Dep't of Air Force v. Rose*, 425 U.S. 352, 380 n.19 (1976); *accord Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 391 (D.C. Cir. 1987). As *Rose* indicates, that a threat to privacy is conceivable on some generalized, conjectural level is not sufficient to justify evoking Exemption 6. *See* 425 U.S. at 380 n.19.

If, at step one, the agency fails to establish that disclosing the contested information would lead to the invasion of a nontrivial personal privacy interest protected by Exemption 6, the FOIA demands disclosure, without regard to any showing of public interest. *See, e.g.*, *Assoc. Press v. Dep't of Def.*, 554 F.3d 274, 291 (2d Cir. 2009); *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008). If, on the other hand, the agency does make the requisite threshold showing regarding a privacy interest, the public interest in disclosure becomes relevant. Another, perhaps more accurate way of looking at the matter is to say that, at step one, we look to see whether there is any privacy interest that out-

weighs the generalized public interest in disclosure that inheres in the FOIA itself, and which is reflected in the presumption in favor of disclosure; if so, we then look (at step two) to see if the public interests in disclosing the *particular* information requested outweigh those privacy interests.

At step two we employ a balancing approach: We place the privacy interests identified at the first step on one end of the balance, and the public interest favoring disclosure on the other. But the public interest to be considered in this balance is circumscribed: "the *only* relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Bibles v. Or. Natural Desert Ass'n*, 519 U.S. 355, 355-56 (1997) (per curiam) (quotation marks and citations omitted, alteration in original). In assessing the public interest in disclosure, we examine whether "the public interest sought to be advanced is a significant one"— one "more specific than having the information for its own sake"—and whether the requested information "is likely to advance that interest." *Favish*, 541 U.S. at 172. Again, the plaintiff's particular reasons for requesting the information are irrelevant. *See Forest Serv. Emps.*, 524 F.3d at 1025.

After taking account of the relevant privacy and public interests, the ultimate issue with regard to the application of Exemption 6 is whether, in light of the public interest that would be served by disclosure, the accompanying invasion of privacy would be "clearly unwarranted." 5 U.S.C. § 552(b)(6). Answering that question necessarily requires the exercise of judgment. We exercise that judgment mindful that "[i]n the [FOIA] generally, and particularly under Exemption 6, there is a strong presumption in favor of disclosure that must be indulged . . . by the courts." *United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus., Local 598 v. Dep't of the Army, Corps of Eng'rs*, 841 F.2d 1459, 1463 (9th Cir. 1988), *abrogated on other grounds by*

*Reporters Comm.*, 489 U.S. at 771. "[U]nder Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the [FOIA]." *Wash. Post Co. v. Dep't of Health & Hum. Servs.*, 690 F.2d 252, 261 (D.C. Cir. 1982).

**B.**

**[13]** We begin the Exemption 6 analysis by evaluating, de novo, whether the district court had an adequate factual basis to undertake the balancing of interests described above. *See Lane*, 523 F.3d at 1135. We look first to the VA's *Vaughn* index to ascertain whether it meets the standard set forth in our precedent. *See id.* Such an index must identify each withheld document, describe its contents to the extent possible, and give "a particularized explanation of why each document falls within the claimed exemption." *Lion Raisins*, 354 F.3d at 1082. The *Vaughn* index need not, of course, "disclose facts that would undermine the very purpose of its withholding," *id.* at 1084, but it "should reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves protection." *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996). If the agency is unable to carry its burden with public affidavits, it may attempt to do so with *in camera* affidavits, but *only* after it has attempted "to justify FOIA withholdings in as much detail as possible on the public record." *Lion Raisins*, 354 F.3d at 1084.

**[14]** Here, the VA's *Vaughn* index falls short with regard to many of the records. We discuss how the *Vaughn* index is deficient below, in the context of each contested email.

**[15]** The district court was able to overlook the index's deficits by skipping over the first step of the Exemption 6 analysis, at which it should have determined, on a record-by-record basis, whether a nontrivial privacy interest was at stake. Instead, after examining the emails *in camera*, the district concluded, seemingly categorically rather than on an

individualized basis, that their authors "have a personal privacy interest in the thoughts and beliefs contained in their communications." When it then concluded that "the public has no legitimate interest in the redacted portions of the emails," the ultimate legal question, so framed, was an easy one for the district court: "After balancing the nonexistent public interest in disclosure against the [personal privacy] interest protected by Exemption 6, the Court concludes that disclosure of the redacted information would constitute a clearly unwarranted invasion of privacy."

**[16]** Insofar as the district court made a categorical privacy judgment, it erred. Such categorical determinations are rarely proper under the FOIA; they are appropriate only in those circumstances in which disclosing a *type* of record defined by its *content*, such as an identifiable individual's rap sheet, will invariably result in an invasion of personal privacy. *See Reporters Comm.*, 489 U.S. at 776-80.

An email, however, is defined not by its content but by its mode of transmission. We could no more conclude that releasing emails would inevitably invade someone's privacy in the FOIA sense than we could conclude that disclosing all letters, faxes, telegrams, or text messages would do so. With regard to all these modes of communication, the privacy interests at stake, "the public interest in disclosure, and a proper balancing of the two, will vary depending upon the *content* of the information and the nature of the attending circumstances." *Wiener v. FBI*, 943 F.2d 972, 985 (9th Cir. 1991) (emphasis added, footnote omitted).[8]

---

[8]We note that the district court was incorrect in broadly characterizing the emails at issue as concerning "private citizens." By all indications, the emails were to and from VA employees in their capacity as such. This difference is not necessarily dispositive, but it is relevant. *See Lissner v. U.S. Customs Serv.*, 241 F.3d 1220, 1223 (9th Cir. 2001) ("It is true that individuals do not waive all privacy interests in information relating to them simply by taking an oath of public office, but by becoming public officials, their privacy interests are somewhat reduced." (citation omitted)).

**[17]** Moreover, for most of the records at issue, whether the privacy interest at stake is more than de minimis is entirely unclear from the public record; for many of the records, even *in camera* inspection is not sufficiently illuminating to allow us to make the privacy determination. Disclosure of most of these records may indeed constitute a nontrivial invasion of personal privacy, but the VA has yet to articulate why. This evidentiary gap requires us to speculate as to the privacy interest that would be affected by disclosure. We "should not be required to speculate on the precise relationship between each exemption claim and the contents of the specific document[s]." *Wiener*, 943 F.3d at 988 (quoting *Van Bourg, Allen, Weinberg & Roger v. NLRB*, 656 F.2d 1356, 1358 (9th Cir. 1981) (alteration in original)). That we must do so here is a sure sign either that the factual record is incomplete or, if the record is complete, that the VA cannot carry its burden of justifying the exemption.

**[18]** We therefore remand with regard to those records as to which, for the reasons explained below, the record lacks a sufficient factual basis upon which to evaluate the agency's claimed exemption. On remand, the district court should permit supplementation of the factual record; if, after that opportunity, the court still must speculate as to the privacy interest at stake, the VA has failed to carry its burden, and the record must be disclosed. *See Fiduccia*, 185 F.3d at 1040; *Wiener*, 943 F.2d at 979.

### *Email 2*[9]

The *Vaughn* index states that this is an email between two particular individuals, and that the redacted portion "describes [the] medical illness of an identified employee." This terse description suggests that a substantial privacy interest is at

---

[9]Like the district court, we refer to each email by the number used in the VA's index. Emails 1, 5, and 7 are no longer in dispute.

stake. But without knowing more context, it is impossible to evaluate whether there is any public interest in disclosure.

**[19]** Examining the document *in camera*, however, we are satisfied that the information was properly withheld under Exemption 6. Only a few words are redacted from this email. The rest of the email make clear that the only information omitted was the reason why a named VA employee was absent from work. "Information regarding illness or health is personal, and falls under the scope of Exemption 6." *Dobronski v. FCC*, 17 F.3d 275, 278 (9th Cir. 1994). Yonemoto has not articulated a particularized public interest in knowing the type of medical illness causing this employee's absence. We therefore affirm the application of Exemption 6 to Email 2.

## *Email 3*

According to the *Vaughn* index, the redacted portion of this email "describes conditions that would disqualify [the recipient's] mother from participation in a particular research project." This description, alone, is insufficient to carry the agency's burden. We have no idea what the "research project" is or what its requirements are. For all we know from the *Vaughn* index, the disqualifying condition is height, hair color, or handedness; the revelation of any of those conditions which would likely entail only a *de minimis* privacy interest.

**[20]** Examining the email itself, we learn that a two-line block of text was redacted above a forwarded email about a clinical trial for a medication to treat memory impairment. The trial has enumerated requirements relating to age, health, and living conditions. There is a nontrivial privacy interest in the particular reasons that an identifiable person does not meet those requirements. *Id.*; *Multnomah Cnty. Med. Soc'y v. Scott*, 825 F.2d 1410, 1415-16 (9th Cir. 1987). Yonemoto has not identified a particularized public interest in disclosure, and we see none. Therefore, the privacy interest prevails, and

the VA may withhold the reasons the recipient's mother does not meet the trial's requirements under Exemption 6.

There is no reason, however, to withhold the first sentence of the redacted portion of this email. It does not relate to the concerns addressed above and is, in fact, entirely mundane. Most importantly, the first sentence of this email is "reasonably segregable" from the portions of the record that may be permissibly withheld; the VA must therefore disclose it. *See* 5 U.S.C. § 552(b); *Pacific Fisheries, Inc. v. United States*, 539 F.3d 1143, 1149-50 (9th Cir. 2008).

*Email 4*

The redacted portion of Email 4 is described in the *Vaughn* index as "a discussion concerning the location of an identified EEO complainant and access to her records in the VA organizational structure. As an aside, the complainant is not the plaintiff." Here, too, the VA fails to provide enough information to ascertain the privacy interest at stake. We do not even know, for example, what is meant by "location." The term could refer to something geographic (a home or office), in which case the level of specificity would matter (street address, city, state, etc.). Or it could refer to the employee's position within the organization—for example, the subdivision of the VA in which she works, or her job title. The lack of detail in the *Vaughn* index means we can only speculate as to why disclosing the information would invade a nontrivial privacy interest. *See Wiener*, 943 F.3d at 988.

**[21]** Examining the record *in camera*, moreover, we conclude that the vast majority of it cannot be withheld under Exemption 6. Although there are aspects of this record that might cause "embarrassment, shame, stigma, and harassment," legitimate privacy concerns under Exemption 6, *Forest Serv. Emps.*, 524 F.3d at 1026, disclosure would invade those privacy interests only if the information is linked to a particular, identifiable individual. *Ray* held that disclosure of

"highly personal information"— there, "marital and employment status, children, living conditions and attempts to enter the United States"— "constitute[d] only a *de minimis* invasion of privacy" if not "linked publicly with particular, named individuals." 502 U.S. at 175-76. Examining the record *in camera*, we cannot tell what information, if disclosed, would reveal the individual's identity.[10] We therefore remand for the district court to reconsider its ruling as to Email 4 after the record is supplemented.

### Emails 6, 8, & 9

The *Vaughn* index describes the redacted portions of Emails 6 and 8 as a discussion "concerning [the recipient's] interest in another position and his responses as to why he is not interested." Email 9 concerns "an alleged premature rumor concerning who was selected for the Director for the VA in Hawaii." These descriptions are entirely inadequate for a de novo review of the agency's claim of exemption.

After viewing the document *in camera*, we still cannot ascertain whether disclosure would impinge on nontrivial personal privacy interests. We therefore remand for the district court to reconsider these emails after further factual development, including balancing the nontrivial personal privacy interest, if any, against the public interest in evaluating the performance of public employees and the selection process for governmental positions.

### Email 10

Email 10, according to the *Vaughn* index, involves an employee "air[ing] complaint[s] about [an]other employee she works with," and responses from others regarding "working to improve the issue." This description suggests a substantial

---

[10]For example, the email contains a number of acronyms with which we have no familiarity and about which the record is silent.

privacy interest but omits the details necessary to evaluate the public interest in disclosure. Depending on the nature of the complaint, for example, as well as how VA management handled it, there may be a particularized public interest in disclosure. *See, e.g., Favish*, 541 U.S. at 172-73; *Lissner*, 241 F.3d at 1223-24; *Dobronski*, 17 F.3d at 178-79.

Reviewing the email *in camera*, we conclude that the email was properly withheld. Disclosing its contents, comprised of complaints from one VA employee about the personality of another, would cause significant embarrassment to both the email's author and its subject. *See Forest Serv. Emps.*, 524 F.3d at 1026. Moreover, disclosing these relatively petty complaints would reveal nothing about the inner workings of the agency. *See Bibles*, 519 U.S. at 355-56. Accordingly, we affirm withholding Email 10 under Exemption 6.

## *Email 11*

The VA's *Vaughn* index states that Email 11 has two subjects. The first is mundane (one person's "son's college schedule and what her daughter is doing"), while the second is more substantive ("concerns about the Honolulu VA having to pay from its budget the expenses for employees relocating from or back to the mainland"). The *Vaughn* index principally justifies the redactions in terms of Exemption 5, which the VA has abandoned on appeal, and mentions Exemption 6 only in passing.

Turning to the document *in camera*, we hold that nearly all of this document should be released. There may be a sufficient threat to personal privacy to justify redacting the names of particular individuals discussed in the email, a question which we leave to the district court on remand. But the privacy interest in the remainder of the email is *de minimis* at best. Additionally, there is a strong public interest in the primary substance of this email: how much the Honolulu VA has to pay to relocate employees it hires from other locales (pre-

sumably, the mainland), and the possible effects of those incentives on hiring decisions. *See Bibles*, 519 U.S. at 355-56; *cf. Dobronski*, 17 F.3d at 178-79. The redacted portions of Email 11, therefore, could not be withheld entirely.

### *Email 12*

The final email is described as a discussion between a VA employee and a workers' compensation expert regarding the "timeliness in responding to a Department of Labor letter and thoughts about how to address this in the future." The discussion apparently concerns "an employee from an identified service," though we do not know what that "service" is or whether the employee is identified by name.

An *in camera* evaluation tells us little more. The subject line contains a person's name, but we do not know whether that person is a workers' compensation claimant, a healthcare provider, or someone else entirely. If it is the name of a claimant, moreover, it appears unlikely that the rest of the information could be linked to that person were the name redacted. On the other hand, there is a particularized public interest in disclosure, as the email appears to be complaining about how and why workers compensation matters are handled inefficiently. *See Bibles*, 519 U.S. at 355-56. We remand to the district court for it to reconsider this email after the VA provides a more detailed *Vaughn* index.

## CONCLUSION

Yonemoto's claim as to the 157 emails was not mooted by the VA's offer to provide him the records in his capacity as its employee. We remand for the district court to consider the VA's claimed exemptions as to those emails in the first instance. "After receiving an adequate *Vaughn* index and conducting any additional proceedings the district court deems necessary on remand," it should "state in reasonable detail the

reasons for its decision as to each document in dispute." *Wiener*, 943 F.2d at 988.

**[22]**  As to the VA's application of Exemption 6 to the nine *in camera* emails, we vacate the district court's decision and remand for proceedings consistent with this opinion.[11] Each side shall bear its own costs on appeal. *See* Fed. R. App. P. 39(a)(4).

**AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART AND REMANDED.**

---

[11]At the appropriate time, the district court should also consider Yonemoto's eligibility for and entitlement to attorneys' fees and litigation costs at under 5 U.S.C. § 552(a)(4)(E). As the VA conceded at oral argument, the amendments to the FOIA made by the Openness Promotes Effectiveness in our National ("OPEN") Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, apply to this case.